**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

**Jennifer Goakes,**

   Plaintiff,

v.

**Rocky Mountain Orthopaedic Associates, Inc.,** a Colorado corporation,

   Defendant.

---

**COMPLAINT AND JURY DEMAND**
_____

COMES NOW the Plaintiff, Jennifer Goakes, by and through the undersigned counsel, and submits her Complaint against Rocky Mountain Orthopaedic Associates, Inc. as follows:

**I. INTRODUCTION**

This case involves a new mother being forced to choose between providing her infant with the healthiest possible start to life and being able to provide for her family. A broad consensus exists in the medical community that exclusively breastfeeding infants for six months after birth and continuing to breastfeed at least one year after birth is optimal for children and provides numerous benefits to mothers and society. Many mothers need to return to work just a few months after giving birth. These mothers should

not have to choose between parenting according to their values and according to the medical community's "best practices" or working.

In recognition of this, Congress amended the Fair Labor Standards Act to include the "Reasonable Break Time for Nursing Mothers" provision, and the Colorado General Assembly enacted the Work Accommodations for Nursing Mother's Act ("WANMA"). Despite these new protections, some employers continue to disregard the civil rights of women and the fundamental need for society to allow women to both breastfeed their children and work to support themselves and their families. Rocky Mountain Orthopaedic Association, one such employer, made breastfeeding and working so incompatible for one of its MRI techs, Jennifer Goakes, that she was forced to endure a painful medical condition, and was ultimately terminated for attempting to balance work and breastfeeding her daughter.

## II. JURISDICTION AND VENUE

1. This action arises under the Constitution and laws of the United States and the State of Colorado.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343. This action is authorized and instituted pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA"); the Family and Medical Leave Act, as amended, 29 U.S.C. § 2601, *et seq.* ("FMLA"); and Title VII of the Civil Rights Act of 1964,

as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b)(1)-(2) because the Defendant is located in the jurisdiction of the United States District Court for the District of Colorado and because a substantial portion of the employment practices alleged to be unlawful were committed within this jurisdiction.

4. Pursuant to the requirements of Title VII, Plaintiff has filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and has requested her right to sue letter and timely initiated this action.

5. Plaintiff also engaged in mediation with Defendant prior to these proceedings; thus, she has satisfied the requirements of C.R.S. § 8-13.5-104.

### III. PARTIES

6. Plaintiff Jennifer Goakes is a citizen of the United States and, at all times relevant, was a resident of and domiciled in the State of Colorado.

7. Defendant Rocky Mountain Orthopaedic Associates, Inc. ("RMOA") is a Colorado corporation and, at all times relevant, continuously did business in Colorado.

8. At all relevant times, RMOA is and has been an "employer" and "continuously employed employees engaged in commerce, industry, and sales" within the meaning of the FLSA and an "employer" as defined by WANMA.

9. At all relevant times, RMOA was an employer within the meaning of the FMLA and Title VII, employing more than fifty (50) employees.

## IV. FACTUAL ALLEGATIONS

10. Plaintiff was employed by RMOA from approximately June 6, 2006 through approximately August 14, 2018 and was employed for 1,250 hours or more in each year of her employment.

11. Plaintiff was hired as an x-ray technologist and was transferred into an MRI technologist position in 2007.

12. Throughout her employment, Plaintiff consistently performed well, drew praise and received excellent performance feedback. She was specially requested by numerous patients and physicians, particularly for patients who had difficulties getting through exams, because of her skill, compassion and individualized approach to patient care. During her employment, Plaintiff was never counseled or reprimanded for job performance issues.

13. In September 2016, Plaintiff announced she was pregnant. She worked through February 24, 2017 and gave birth on March 2, 2017. Plaintiff utilized leave pursuant to the FMLA from February 25, 2017 through May 31, 2017.

14. Childbirth causes hormonal and physiological changes in a woman that trigger lactation, the secretion of milk from mammary glands. This physiological process allows mothers to breastfeed their infants.

15. Breastfeeding provides numerous medical and neurodevelopmental benefits for infants. Because of this, the American Academy of Pediatrics recommends that mothers breastfeed their infants exclusively for the first six months of life and continue breastfeeding for a year or longer. This recommendation is broadly endorsed by the medical and public health communities.

16. Plaintiff breastfed her baby throughout her maternity leave pursuant to the FMLA and intended to continue breastfeeding her baby throughout her daughter's first year, consistent with the American Academy of Pediatrics' recommendation and her parenting values.

17. Galactopoiesis is the maintenance of lactation once lactation has been established. For this to occur, milk must be regularly and frequently removed from the mammary gland. Therefore, if mothers wish to breastfeed their infants for a year or longer, they must continue to breastfeed regularly and frequently throughout this time. For this reason, when mothers need to be separated from their infants for longer than two or three hours, they must express, or pump, breastmilk.

18. Mothers who are away from their infants also need to express breastmilk to create a reserve of breastmilk to feed their infants and to relieve painful pressure from a build-up of milk. A build-up of milk or insufficient draining of the breasts during expressing can lead to blocked milk ducts and mastitis, a painful inflammation of breast tissue.

19. Plaintiff returned to work from leave pursuant to the FMLA on or about June 1, 2017.

20. She intended to continue to breastfeed her daughter so, accordingly, she asked RMOA's Director of Administration Pam Bachorski and Supervisor Kelly Story for a twenty-minute break, every four hours, to express breastmilk.

21. Plaintiff requested two daily, consistent times for her pump breaks so that she could maintain a consistent pumping schedule and be assured she had coverage each day.

22. On or about mid-June 2017, Plaintiff asked Story about the "minimum" hours required for an RMOA employee to maintain full-time employment status; Plaintiff needed

her full-time status for her and her child's health benefits, but was also, as a mother of a newborn, desiring to reduce her work hours slightly.

23. On or about June 8, 2017, Bachorski inaccurately announced that Plaintiff had requested to work part time and asked to discuss which two or three days each week Plaintiff would work as a part-time MRI tech for RMOA.

24. In the meeting referenced in the preceding paragraph, Plaintiff clarified that she never requested a move to part-time employment and expressed a desire to work her regular schedule.

25. Bachorski informed Plaintiff, "it is the perfect time for you to go down to part-time," and claimed that hours needed to be spread evenly among three MRI techs.

26. When Plaintiff resisted reducing her hours and sought reinstatement to a comparable and full-time position, Bachorski said, "I'm not happy with this" and, thereafter, Bachorski's demeanor toward Plaintiff changed for the worse.

27. After Plaintiff asserted rights pursuant to the FMLA to be reinstated to a comparable and full-time position, and after Plaintiff denied a request that she work part time, Bachorski was angered and initiated a retaliation campaign.

28. Bachorski informed Plaintiff that she was not pleased with Plaintiff's refusal to work part-time and that she would no longer provide previously scheduled time for Plaintiff to express breastmilk on Fridays or on any other day that one of the other employees was not available to cover for Plaintiff's pumping break.

29. In late November 2017, Kelly Story said Ms. Goakes' need for pumping breaks could no longer be accommodated per a directive from Pam Bachorski. Ms. Goakes was instructed to fit any need for pumping in between MRI scans. Ms. Story told Ms. Goakes

that pumping should not take more than 10 minutes to accomplish – an unreasonably short period of time to express breast milk.

30. After planned, adequately-long breaks were no longer incorporated into the MRI schedule, Plaintiff had to continuously renew her request for breaks to express breastmilk.

31. Plaintiff requested that set, consistent times for each day be scheduled.

32. No consistent or scheduled time was ever provided to Ms. Goakes, leaving her without the ability to know when next she may be able to pump.

33. Ms. Goakes, like any other nursing mother, needed consistent times set aside for expressing breastmilk. For example, if Plaintiff happened to receive a break at 1 p.m. to pump, another break provided at 2 p.m. would be meaningless, as Plaintiff would not be able to express any milk so shortly thereafter a previous pumping break.

34. After Plaintiff asserted rights pursuant to the FMLA and asserted rights to express breastmilk pursuant to the FLSA and WANMA, Plaintiff's coworkers began subjecting her to heightened scrutiny and reporting trivial matters to management. Upon information and belief, Plaintiff's coworkers did this at Bachorski's direction so Bachorski could justify denying Plaintiff accommodations or to justify her termination.

35. The insufficient break time to express breastmilk caused Plaintiff to develop blocked milk ducts and mastitis, which caused her great pain and reduced her milk output. She often spent her entire weekends recuperating from these conditions.

36. Plaintiff asked a co-worker, Dove, to help cover on Fridays so that Plaintiff could take breaks to express breastmilk. Dove refused unless she was given at least a four-hour shift. This resulted in Plaintiff giving up a five-hour shift and pay on Fridays just so she could express breastmilk.

37. From December through April of 2018, Plaintiff reduced her pumping to one time per day to minimize workplace stress. This caused her mastitis to worsen.

38. In August of 2018, Story asked Plaintiff how much longer she planned to breastfeed. Several days later, on August 14, 2018, Bachorski terminated Plaintiff. Bachorski provided no reason for her termination.

39. Plaintiff had the most seniority of the MRI techs, had an excellent record, and was also trained as an x-ray technician. Yet she was selected for termination over other employees who were not breastfeeding or raising an infant.

40. Around the time that Plaintiff was terminated, RMOA was being acquired by St. Mary's Medical Center. Bachorski had direct input in which RMOA employees would be offered jobs at St. Mary's and told all of the MRI techs that they would retain their jobs at the same pay. However, because Plaintiff was terminated, she was not recommended for hire at St. Mary's. Dove and Reed both were hired at St. Mary's and given more hours.

41. Defendant's retaliatory actions were taken by Bachorski, who had actual knowledge of Plaintiff's protected activity.

42. Defendant's actions were adverse actions within the meaning of the FMLA, FLSA, Title VII, WANMA and for purposes of a wrongful termination in violation of public policy claim, because forcing Plaintiff to work fewer hours and then terminating her employment would have dissuaded a reasonable person in Plaintiff's circumstance from asserting her right to take reasonable breaks to express breastmilk.

## V. LEGAL CLAIMS

### FIRST CLAIM FOR RELIEF
### (Retaliation in Violation of the FLSA)

43. Plaintiff hereby incorporates the foregoing paragraphs of this Complaint as though fully incorporated herein.

44. The FLSA's Break Time for Nursing Mother's Provision, codified at 29 U.S.C. § 207(r), entitles nursing mothers to reasonable break time to express breast milk in a private location, that is not a toilet stall, for one year after childbirth.

45. Plaintiff was entitled to reasonable break time to express breastmilk from her return to work in June of 2017 until March of 2018.

46. Beginning immediately upon her return to work from leave pursuant to the FMLA, Plaintiff engaged in protected activity under the FLSA when she requested on multiple occasions to be granted reasonable break time to express breast milk.

47. Defendant was on notice of Plaintiff's requests for reasonable break time because Plaintiff made these requests to Bachorski.

48. After asserting her FLSA rights, Plaintiff was subjected to adverse employment actions, including, but not limited to, assignment of less desirable shifts, being forced to give up Friday shifts, heightened scrutiny from her peers at the direction of Bachorski, termination, and Bachorski's refusal to recommend Plaintiff for a position at St. Mary's.

49. A causal connection exists between Plaintiff's protected activity and the adverse employment actions, because days after Plaintiff returned to work and requested reasonable breaks, Bachorski indicated her displeasure and began taking adverse actions against Plaintiff as previously described.

50. As a result of Defendant's retaliation, Plaintiff suffered significant damages, including but not limited to physical pain, economic losses, and garden variety emotional distress.

## SECOND CLAIM FOR RELIEF
### (Retaliation in Violation of the FMLA)

51. Plaintiff hereby incorporates the foregoing paragraphs of this Complaint as though fully incorporated herein.

52. Plaintiff applied for and was granted leave pursuant to the Family Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.* ("FMLA") for the birth of her daughter and to care for her daughter. Plaintiff used the leave from February 25, 2017 through May 31, 2017.

53. On or about June 13, 2017, Bachorski informed Plaintiff that there were three MRI techs and that Plaintiff needed to reduce her hours so hours could be spread evenly between the three MRI techs.

54. Plaintiff requested to be restored to her pre-leave position or an equivalent position with equivalent employment benefits, pay and other terms and conditions of employment.

55. Plaintiff's request to be restored to her pre-leave position or an equivalent position constitutes an assertion of rights pursuant to the FMLA.

56. Defendant was on notice of Plaintiff's assertion of rights pursuant to the FMLA because Plaintiff made her request to Bachorski.

57. After asserting her FMLA rights, Plaintiff was subjected to actions a reasonable employee would find to be adverse, including but not limited to: refusal to grant accommodations that were granted to other nursing mothers in departments not reporting to Bachorski, assignment of less desirable shifts, being forced to give up Friday shifts,

heightened scrutiny from her peers at the direction of Bachorski, termination, and Bachorski's refusal to recommend Plaintiff for a position at St. Mary's.

58. A causal connection exists between Plaintiff's protected activity and the adverse employment actions because, when Plaintiff asserted her FMLA rights, Bachorski indicated her displeasure and began taking adverse actions against Plaintiff as previously described.

59. As a result of Defendant's retaliation, Plaintiff suffered significant damages, including but not limited to physical pain, economic losses, and garden variety emotional distress.

### THIRD CLAIM FOR RELIEF
### (Sex Discrimination in Violation of Title VII)

60. Plaintiff hereby incorporates the foregoing paragraphs of this Complaint as though fully incorporated herein.

61. Pregnancy, childbirth and lactation are conditions unique to women. Plaintiff was a woman who was pregnant, gave birth and subsequently began lactating. Therefore, at all relevant times she was a member of the class of persons protected from discrimination on the basis of her sex under Title VII.

62. Lactation is a biological and physiological change in a woman's body directly caused by pregnancy and childbirth. Therefore, lactation is a related medical condition of pregnancy.

63. Lactation causes the need to express breastmilk regularly, typically every two to four hours. The need for reasonable break time to express breastmilk is exclusive to women.

64. At all relevant times, Plaintiff performed her job duties satisfactorily or better and was qualified for her position at RMOA.

65. When Plaintiff returned from maternity leave, Bachorski and other employees subjected Plaintiff to heightened scrutiny, caused Plaintiff to lose shifts and hours, and ultimately terminated her because of a sex-linked medical condition that is directly related to pregnancy, childbirth and parental responsibilities.

66. Plaintiff's sex was a motivating factor in the above-described adverse actions Defendant took against her.

67. Defendant is liable for the acts and omissions of its agents and employees. Defendant, either directly or by and through its agents, discriminated against Plaintiff on the basis of her sex.

68. Defendant's conduct was the proximate cause of Plaintiff's injuries, damages, and losses.

69. Defendant's conduct was engaged in with malice or with reckless indifference to the federally-protected rights of Plaintiff.

70. As a direct result of Defendant's actions, Plaintiff has suffered damages, including garden variety emotional distress and economic losses.

### FOURTH CLAIM FOR RELIEF
### (Retaliation in Violation of Title VII)

71. Plaintiff hereby incorporates the foregoing paragraphs of this Complaint as though fully incorporated herein.

72. Plaintiff engaged in activity protected under Title VII when she repeatedly asserted her right as a woman for reasonable break time at work to express breastmilk.

73. Plaintiff had a good faith belief that her right to be free from discrimination for expressing breastmilk was protected by Colorado and federal law.

74. Defendant was on notice of Plaintiff's protected activity because Plaintiff asserted her rights to Bachorski.

75. After Plaintiff engaged in activity protected by Title VII, Bachorski subjected her to adverse employment actions, including but not limited to: assignment of less desirable shifts, heightened scrutiny from her peers at the direction of Bachorski, termination, and Bachorski's refusal to recommend Plaintiff for a position at St. Mary's.

76. A causal connection exists between Plaintiff's protected activity and the adverse employment actions because, days after Plaintiff returned to work and asserted her Title VII rights, Bachorski indicated her displeasure and began taking adverse actions against Plaintiff as previously described.

77. Defendant is liable for the acts and omissions of its agents and employees. Defendant, either directly or by and through its agents, discriminated against Plaintiff on the basis of her sex and caused her significant damages, injuries and losses.

78. Defendant's conduct was engaged in with malice or with reckless indifference to the federally-protected rights of Plaintiff.

79. As a direct result of Defendant's actions, Plaintiff has suffered damages, including garden variety emotional distress and economic losses.

**FIFTH CLAIM FOR RELIEF**
**(Failure to Accommodate in Violation of WANMA)**

80. Plaintiff hereby incorporates the foregoing paragraphs of this Complaint as though fully incorporated herein.

81. The Colorado Workplace Accommodations for Nursing Mothers Act (WANMA) provides that employers must provide reasonable break time to allow an employee reasonable time to express breastmilk for up to two years after childbirth.

82. At all relevant times, Plaintiff was entitled to reasonable break time to express breastmilk.

83. Plaintiff attempted to exercise this right when she requested reasonable break time to express breastmilk on multiple occasions after she returned to work from maternity leave. She made this request to Defendant Bachorski several times from June of 2017 through August of 2018.

84. Defendant failed to engage in reasonable efforts to provide the requested break time for expressing breastmilk and instead made Plaintiff work around her MRI schedule to find no more than ten minutes to express breastmilk.

85. Plaintiff and Defendant engaged in formal mediation on May 29, 2019 pursuant to C.R.S. § 8-13.5-104.

86. As a result of Defendant's failure to accommodate Plaintiff by denying her reasonable break time to express breastmilk, Plaintiff suffered damages, including but not limited to physical harm, garden variety emotional distress and economic losses.

**SIXTH CLAIM FOR RELIEF**
**(Retaliation in Violation of WANMA)**

87. Plaintiff hereby incorporates the foregoing paragraphs of this Complaint as though fully incorporated herein.

88. As described herein, Plaintiff repeatedly asserted her rights under WANMA by requesting reasonable break time to express breastmilk from Defendant Bachorski.

89. After Plaintiff asserted her rights under WANMA, Defendant subjected her to adverse employment actions, including but not limited to: refusal to grant accommodations that were granted to other nursing mothers in departments not reporting to Bachorski, assignment of less desirable shifts, heightened scrutiny from her peers at the direction of Bachorski, termination, and Bachorski's refusal to recommend Plaintiff for a position at St. Mary's.

90. A causal connection exists between Plaintiff's protected activity and the adverse employment actions because, days after Plaintiff returned to work and requested reasonable breaks, Bachorski indicated her displeasure and began taking adverse actions against Plaintiff as previously described.

91. As a result of Defendant's retaliation against Plaintiff for attempting to assert her rights under WANMA, Plaintiff suffered damages, including garden variety emotional distress and economic losses.

### SEVENTH CLAIM FOR RELIEF
### (Wrongful Discharge in Violation of Public Policy)

92. Plaintiff hereby incorporates the foregoing paragraphs of this Complaint as though fully incorporated herein.

93. Support for and promotion of breastfeeding is a strong public policy both in Colorado and nationally. The Colorado General Assembly passed WANMA "to become involved in the national movement to recognize the medical importance of breastfeeding… and to encourage removal of boundaries placed on nursing mothers in the workplace." C.R.S. § 8-13.5-102(2).

94. The Colorado General Assembly declared that "extensive research indicates that there are diverse and compelling advantages to nursing for infants, mothers, families, businesses, and society, including less illness among children who are nursed and lower health care costs." C.R.S. § 8-13.5-102(1)(b).

95. Plaintiff had a good faith belief that she had a right to express breastmilk at work and to request reasonable break time to do so.

96. Defendant knew or reasonably should have known that Plaintiff's requests for reasonable break time were made because of her good faith belief that she had a right to do so.

97. Contrary to the clearly expressed public policy of Colorado and the United States, Defendant caused Plaintiff's hours to be reduced and terminated her because she attempted to exercise her right to reasonable break time to express.

98. Defendant's conduct was willful and wanton and attended by circumstances of malice and a reckless disregard for Plaintiff's rights.

99. As a direct result of Defendant's actions, Plaintiff has suffered damages, including garden variety emotional distress and economic losses.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and award her all relief as allowed by law, including, but not limited to, the following:

a.  Actual economic damages, in amounts to be determined at trial;

b.  Liquidated damages;

c.  Tax enhancement award;

d.  Compensatory damages, including but limited to those for past and future pecuniary and non-pecuniary losses;

e.  Punitive damages;

f.  Pre-judgment interest and post-judgment interest at the highest lawful rate;

g.  Attorney's fees and costs of this action, including expert witness fees, as appropriate; and

h.  Any such further relief as justice requires or the law allows.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 10th day of April, 2020.

         **SEARS & ASSOCIATES, P.C.**

         */s/ Hollie L. Wieland*

         Hollie L. Wieland
         Attorney for Plaintiff

<u>Plaintiff's Address:</u>
c/o Hollie L Wieland
Sears & Associates, PC
2 No. Cascade Ave., Suite 1250
Colorado Springs, CO 80903